LURTY (SLOCOMB v.). See Case No. 12,-949.

## Case No. 8,608.

### LUSCOM v. OSGOOD.

[1 Spr. 82; 7 Law Rep. 132; 11 Hunt, Mer. Mag. 364.] [1]

District Court, D. Massachusetts. June, 1844.

PARENT AND CHILD — SERVICES OF MINOR CHILD —SEAMEN — DUTY OF CONSUL — AUTHORITY OF MASTER — LIABILITY OF OWNER FOR SEAMEN'S WAGES.

1. A minor, without the knowledge of his father, concealed himself on board a vessel bound on a whaling voyage, and was not discovered, until the vessel was at sea. The master soon afterwards put into Fayal, where he might have left the minor with the American consul. *Held* that the father was entitled to recover for the services of his son, from the time the vessel left Fayal.

[Cited in The Hattie Low, 14 Fed. 880.]

[Cited in Gabrielson v. Waydell, 135 N. Y. 7, 31 N. E. 970.]

2. The master might have left the minor with the consul, without paying the three months' extra wages. It would, in such case, have been the duty of the consul to provide for him, and send him to the United States.

3. The court allowed as compensation, such proportion of the lay given to those who shipped as boys, as the time after the ship left Fayal, bore to the time of the whole voyage.

4. The owners are liable for the wages of a seaman, employed by the master, notwithstanding he may have had a complement of men without him.

In admiralty.

J. H. Prince, for libellant.

J. H. Ward, for respondent.

SPRAGUE, District Judge. The libellant seeks to recover compensation for the services of his minor son, on board a whale ship, of which the respondent was owner. In July, 1840, the ship sailed from Salem, on a whaling voyage. On the morning of that day, the son was sent by his father to school, as usual; but, wishing to go on this voyage, he, without the knowledge of his father, or of the captain or owners, concealed himself on board the ship, and was not discovered by the captain, until some hours after she had discharged her pilot. The lad then confessed that he had run away, because his parents would not consent to his going to sea. The captain told him that he had done wrong, but it was then too late to return; and put him on duty as a seaman. The ship, after taking seventeen hundred and thirty-four barrels of sperm oil, returned to Salem in March, 1844, having been absent three years and eight months; during all which time the son performed the duty of a seaman, to the entire satisfaction of the captain, who, it ought to be added, seems to have treated this lad, thus thrown upon his hands, with much kindness and attention. In January, 1842, when eighteen months out, one of the crew died. The captain then shipped the lad as one of his crew, and

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission. 11 Hunt. Mer. Mag. 364, contains only a condensed report.]

caused him to sign the articles. From that time, it is conceded that the libellant is entitled to compensation at the rate of $1/150$ part of the proceeds; and the whole controversy relates to his prior services.

It is insisted by the father, that the captain ought to have sent the son home, by a schooner, bound to Boston, and spoken when only three days out. But I am not satisfied, from the evidence, that it was in his power. It is next urged, that the lad should have been left with the American consul at Fayal, to be sent home. It appears that the ship, in August, 1840, when a month out, touched at that place for refreshments, and remained there about thirty-six hours. The captain testifies that it was his purpose to send the lad home from Fayal, if there were any opportunity; that he made inquiry, but could find no vessel coming to the United States; and that he supposed that he could not leave him with the consul, without paying three months' wages. This was an error. It would not have been the case of a discharge of a seaman, within the third section of the statute of 1803 (2 Stat. 203, c. 9), any more than if he had been taken from a wreck, and put on duty for the time being. But having offered himself as a seaman, and being permitted by the captain to perform all the duties of one, he was a mariner, within the meaning of the fourth section of that act; and it would have been the duty of the consul to have afforded him subsistence, and sent him to the United States. And it cannot be doubted, that the gentleman, who holds that office at Fayal, would have performed that duty with all fidelity, and sent this lad to his father.

The posture of the case is this. The captain well knew that the father was entitled to the services of the son, who had escaped from his control, and was then rendering services on board this ship. He was in the port of Fayal, one of the Western Islands, whence the usual passage to the United States is not more than thirty days. If the lad had been left there, it would have been the legal duty of the American consul to provide for him, and send him home. The captain called on the consul for other purposes, but never requested him to take charge of this boy, or even mentioned that he was on board his vessel; but took him on a three years' whaling voyage, intending to have his services during the whole period. From that time, he must be deemed to have taken these services voluntarily, and the father is entitled to compensation.

It has been urged, that the ship having a full complement of seamen, the captain was not authorized to take more; and therefore the owners are not responsible. The master of a ship has authority to employ mariners. The person employed is not bound to inquire whether he has already a full crew.

It would be a doctrine as novel as it is unjust, to deprive a seaman of his remedy against the owners, on the ground that the master had hired more than were needed.

It has been further urged, in behalf of the respondent, that the practice of lads concealing themselves on board outward-bound vessels, is an evil which the court should endeavor to suppress, by withholding all compensation. But I apprehend, that would have little influence upon the thoughtlessness of early youth, impelled by a spirit of adventure and an excited imagination. And there is little danger that a parent, who would not consent that his son should go, under contract, for compensation, and properly provided under his own auspices, would connive at his furtively, and in a state of destitution, throwing himself, against their will, upon the officers of a ship, whose kindness and good will would be so important, not only to his comfort, but to his health and safety. On the other hand, if the services of strong and active lads, of nearly seventeen years of age, were to be had on these long voyages, without compensation, there would be a palpable temptation, on the part of the officers, to connive at, or encourage, the practice. And the danger would be increased when the master, as in the present case, is also an owner. To this we may add, that the evils are much greater to the one party than to the other. The owners are only called upon to pay for services of which they have, through their agent, availed themselves. But, on the other hand, the father would wholly lose those services; and, what in many cases would be vastly more important, he would lose the control and supervision of his son, during several years of the most critical period of his life, when his habits are to be formed, his education, perhaps, completed, and his occupation or profession determined. The most cherished purposes, and fondest hopes, of the parent might thus be destroyed.

I shall decree compensation from the time the ship sailed from Fayal; and, in ascertaining the amount, shall adopt the lay given those who shipped as boys, and for which this lad subsequently shipped, that is, $1/150$; and, for the time, I shall adopt the rule prescribed in the shipping articles in case of death, and give such proportion of $1/150$ of the whole products of the voyage, as the time after the ship left Fayal bears to the whole time occupied in performing the voyage.

As to remedy of parent against ship-owner, for abduction of his minor child, and the measure of damages. see Lovrein v. Thompson [Case No. 8,557]; Sherwood v. Hall [Id. 12,777]; Steele v. Thacher [Id. 13,348]; The Platina [Id. 11,210].

LUSE (BEAR v.). See Case No. 1,179.

LUSE (WOOD v.). See Case No. 17,950.